JUDGE DANIELS

11 CIV 2973

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

Disney Enterprises, Inc. and Buena Vista Pay
Television, Inc.

                Plaintiffs,

   -against-

Dish Network L.L.C.,

                Defendant.

-----------------------------------------------------------X

Civil Action No.

COMPLAINT

RECEIVED MAY 2 2011 U.S. CASHIERS

Plaintiffs Disney Enterprises, Inc. ("Disney Enterprises") and Buena Vista Pay Television, Inc. ("BVPT") (collectively, "Plaintiffs"), by their attorneys, Weil Gotshal and Manges LLP, for their complaint against Dish Network L.L.C. ("Dish" or the "Defendant"), allege as follows:

## NATURE OF THE ACTION

1.    This is an action for preliminary and permanent injunctive relief against Dish for violations of the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, and tortious interference with contractual relations. This action arises out of Dish's unauthorized and unlawful distribution, transmission, copying and public display and/or performance of numerous, highly successful motion pictures owned and licensed by the Plaintiffs, including such popular movies as "Alice in Wonderland," "Toy Story 3," and "Up," among others. Dish has also announced imminent plans to unlawfully distribute, transmit, copy and publicly display and/or perform such recent hit movies as "The Sorcerer's Apprentice," "Secretariat," and "Tangled," among others, all without authorization from Plaintiffs. Disney Enterprises' exclusive ownership rights to these movies, as

well as all other movies referenced herein, are fully set forth in the attached Exhibit A, which is incorporated herein by reference (the "Copyrighted Movies").

2. In January 2010, Plaintiff BVPT granted non-party Starz Entertainment, LLC ("Starz") limited rights to exhibit certain of Disney Enterprises' Copyrighted Movies, subject to the express condition that Starz operate as a premium, or "Pay Television Service," akin to HBO, Cinemax, Showtime, and other "Pay Television Services" expressly enumerated in the Starz License.

3. In February 2011, Dish began providing millions of subscribers with <u>free access</u> to the Starz premium television service and all of its copyrighted programming (the "Starz Programming") – including Disney Enterprises' Copyrighted Movies. Neither Plaintiffs nor Starz consented to Dish's scheme to provide its subscribers with Starz Programming for free, which is in direct violation of Plaintiffs' exclusive rights under federal copyright law, as well as the conditions and scope of BVPT's contract with Starz, in which BVPT granted Starz a limited license to distribute the Copyrighted Movies <u>solely</u> for exhibition via "Pay Television."

4. Dish's unlawful distribution, transmission, copying and public display and/or performance of the Starz Programming, including Disney Enterprises' Copyrighted Movies, has <u>already</u> resulted in the repeated and continuing infringement of Plaintiffs' copyright rights. Dish has announced that it plans to continue distributing the Starz Programming, including Disney Enterprises' Copyrighted Movies, twenty-four hours a day, every day, through January 2012, free of charge to its subscribers, thereby threatening Plaintiffs with the specter of continued irreparable harm unless Dish's actions are preliminarily and permanently enjoined by this Court.

5. Because Dish is currently giving away <u>for free</u> the valuable Starz Programming to millions of its subscribers, it is willfully engaging in the unauthorized distribution, transmission, copying and public display and/or performance of Disney Enterprises' Copyrighted Movies. As more fully detailed below, Dish's actions undermine Plaintiffs' ability, as content providers, to control the manner in which their Copyrighted Movies are exhibited by third parties. Dish's actions uproot the common practice of "windowing" – described in detail below – whereby Plaintiffs and other content providers carefully sequence the licensing of exhibition rights to their copyrighted movies after their theatrical release. This sequencing provides for a series of valuable and lucrative premieres and "windows" of exclusive distribution rights, first on premium television, and only later on basic cable television. By distributing Disney Enterprises' Copyrighted Movies for free during a period of time contractually reserved exclusively for "Pay Television" services, Dish's actions are antithetical to the long-standing practice of "windowing," and further threaten to devalue the right to license Disney Enterprises' Copyrighted Movies, erode Plaintiffs' goodwill, reputation and contractual relationships, and critically undermine Plaintiffs' ability to manage the carefully constructed sequencing of distributing Disney Enterprises' Copyrighted Movies in the marketplace.

6. Dish's unauthorized actions have thus caused and threaten to continue to cause Plaintiffs to suffer substantial and immediate irreparable harm, and Plaintiffs have no adequate remedy at law.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. § 501 *et seq.*, and 28 U.S.C. §§ 1331 and 1338(a).

8. This Court has personal jurisdiction over Dish because Dish has conducted and continues to conduct and do business in the state of New York and in this District. In addition, Dish's conduct, which constitutes copyright infringement, has occurred and continues to occur in this District, and has caused and continues to cause Plaintiffs to suffer harm in this District.

9. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1400(a) in that Dish may be found in this District in light of its having office in this District and its extensive commercial activities in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because, *inter alia*, (a) Dish is doing business in this district and (b) Dish's acts or omissions giving rise to this lawsuit, as well as substantial injury to Plaintiffs, have occurred and will continue to occur in interstate commerce, in the State of New York, and in this District.

## PARTIES

10. Disney Enterprises, Inc. is a Delaware corporation maintaining its principal place of business at 500 South Buena Vista Street, Burbank, CA 91521-0105. Disney Enterprises is the exclusive owner of all rights, title and interest in and to copyrights in some of the world's most popular full-length, live action and animated movies, including the Copyrighted Movies at issue here.

11. BVPT is a California corporation maintaining its principal place of business at 500 South Buena Vista Street, Burbank, CA 91521-0105. BVPT licenses, among other things, Disney Enterprises' Copyrighted Movies to pay television services.

12. Upon information and belief, Dish is a Colorado corporation authorized to transact business in New York, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112. Dish is a multi-channel video provider, offering

television, movie and sports programming to its subscribers through a Direct Satellite System, who pay a subscription fee to Dish for such service. Dish has more than 14 million commercial and residential customers in the United States.

## ALLEGATIONS

### Plaintiffs' Production and Distribution of Copyrighted Movies Through "Windowing"

13. Plaintiffs own or control the copyrights and/or the relevant exclusive rights in the Copyrighted Movies under the United States Copyright laws, and have obtained Certificates of Copyright Registration from the Register of Copyrights for their works. A list of certain of the Copyrighted Movies which Dish has infringed by the acts complained of herein is attached hereto as Exhibit A, which is incorporated herein by reference. Exhibit A identifies by number the Certificates of Copyright Registration issued to Plaintiffs or their licensors. True and correct copies of the Certificates of Copyright Registration are attached hereto as Exhibit B, which is incorporated herein by reference.

14. Disney Enterprises' affiliates have spent hundreds of millions of dollars in connection with the production, development and marketing of the Copyrighted Movies. Live action and animated motion pictures are incredibly costly to bring to the marketplace. Disney Enterprises' affiliates often invest hundreds of millions of dollars in production and development costs alone, while spending tens of millions more on marketing and promotional activities.

15. In order to achieve the greatest return on their investment, Plaintiffs, like other content providers in the movie industry, closely control the distribution and exhibition of their copyrighted works through licensing agreements covering various stages of post-theatrical distribution. To that end, Plaintiffs and others in the industry employ the distribution strategy of "windowing." Windowing involves sequencing the release of copyrighted content, first to

various forms of premium paying audiences and then later to other audiences. After the exclusive "window" for distribution in theatres, Plaintiffs and other copyright owners in the industry typically license their copyrighted movies on a sequential basis for designated, exclusive "windows" of time, as follows: (1) to hotels on a "video-on-demand" and "pay-per-view" basis; (2) on DVD and on in-home "video on demand" services; (3) on premium television, such as on Starz, HBO, or Showtime; and then (4) on basic cable, broadcast and/or local stations. There is independent and inherent value to having the exclusive right to distribute a movie for the first time in each successive "window." The process of windowing thus maximizes the value of the copyright for licensors and licensees, and is a common practice in the industry.

16.  Plaintiffs have distributed Disney Enterprises' Copyrighted Movies through this process of windowing. Specifically, in its role as an authorized distributor of Disney Enterprises' copyrighted works, BVPT and/or its affiliates ("Buena Vista") have entered into a number of detailed license agreements with, among others, premium television providers, basic cable providers, as well as "pay-per-view" and "video on demand" television services. Pursuant to these license agreements, certain parties, in exchange for the payment of specified fees and subject to the express terms of the license, licensees are granted the limited right to distribute Disney Enterprises' copyrighted content, including the Copyrighted Movies, for specified, exclusive periods of time.

17.  Dish's unlawful and unauthorized distribution, transmission, copying and public display and/or performance of the Copyrighted Movies has upended Plaintiffs' windowing, has irreparably harmed the Plaintiffs' copyrights and exclusive rights in the Copyrighted Movies, immeasurably devalued Plaintiffs' licenses, and has constrained Plaintiffs'

6

ability to license in the future, resulting in further actual and threatened irreparable injury. Plaintiffs are without an adequate remedy at law with respect to such harm and injury.

**The BVPT/Starz License**

18. Starz is a premium, subscription-based television provider. Starz offers premium movie and original programming entertainment services on 16 channels, including its flagship "STARZ" channel. A satellite or cable operator must charge and collect from its subscriber a specific, time-based (*e.g.*, weekly or monthly) subscription fee in order for a subscriber to have the right to access and/or view Starz Programming, in addition to whatever fee is paid by the subscriber to the satellite or cable operator for underlying access to television programming. The cable or satellite operator cannot simply pay a fee on the subscriber's behalf. In contrast, basic cable television channels are generally available to subscribers without the payment of an additional premium subscription fee, as long as the subscriber has paid to access and/or view basic cable television services.

19. On or about January 1, 2010, BVPT entered into a license agreement with Starz (the "Starz License"), whereby BVPT granted Starz the limited right to distribute certain Copyrighted Movies on "Pay Television" (as defined in the Starz License below) that have been or will be released in theatres from 2010 through and including 2015.

20. Subject to the conditions set forth in the Starz License, BVPT licensed the following Copyrighted Movies, among others, for distribution via Starz: "Alice in Wonderland," "Confessions of a Shopaholic," "Disney's A Christmas Carol," "G-Force," "The Last Song," "Old Dogs," "Prince of Persia: The Sands of Time," "The Princess and the Frog," "The Proposal," "Race to Witch Mountain," "Secretariat," "The Sorcerer's Apprentice," "Surrogates," "Tangled," "Toy Story 3," "Tron: Legacy," "Up," "When in Rome," and "You Again."

21. BVPT's limited grant of rights under the Starz License was expressly predicated upon Starz exhibiting each Copyrighted Movie "only . . . for exhibition via Pay Television . . . ."

22. "Pay Television" is defined in the Starz License as follows:

> ""Pay Television Service" means a subscription programming service (provided that the term "service" herein may refer to either an offering of a single channel (e.g., a "primary" branded service) and/or an offering of a single channel together with multiplex channels with the same branding) which service (i) does not contain Commercials; (ii) is offered on a Sequential Basis; (iii) is available alone or in a package with only other Pay Television Services; and (iv) with respect either to the Pay Television Service itself, or the package of Pay Television Services in which it is available (as applicable), the subscribing consumer is required to pay a material, time based (e.g., weekly, monthly) fee for the right to access and/or view such Pay Television Service(s). The aforementioned fee must be charged in addition to the charge to the consumer for the obligatory basic tier of programming or access (or each of the multiple lower tiers, if and as applicable) to which the applicable consumer subscribes. As of the Effective Date, certain channels of HBO, Cinemax, Showtime, The Movie Channel, Flix and Epix (and their respective multiplexes) and the STE Services are offered as Pay Television Services on certain (but not necessarily all) Traditional TV Offerings, and there are no other Pay Television Services. Pay Television Service offerings are, if in conformance with this Section 1(v), referred to herein as "Pay Television".

23. The Starz License also makes clear that all other rights to exhibit the Copyrighted Movies (e.g., on basic cable networks) have been reserved. BVPT and Starz agreed that "all rights of any kind or nature with respect to the [Copyrighted Movies] and all related content and materials (including but not limited to copyright) are retained by [BVPT], and [BVPT] hereby expressly reserves all such rights (the 'Reserved Rights'), subject only to the limited grant of Exhibition Rights . . . set forth herein."

24. In consideration for this limited right to exhibit the Copyrighted Movies exclusively via Pay Television during the specific "window" of time designated solely for "Pay

8

Television" (the "Pay TV 1 Window"), Starz was required to pay BVPT license fees in accordance with the rate card set forth in the Starz License.

**The "1st Free Window" to Cable Network Licensees**

25. Consistent with the common practice of windowing, in addition to licensing the Copyrighted Movies for exhibition via Pay Television during the Pay TV 1 Window, Buena Vista also licensed the right to exhibit certain Copyrighted Movies to certain linear basic cable television programming services, including cable networks such as FX, Turner, BET, and ABC Family (collectively, the "Network Licensees"), following the lapse of the Pay TV 1 Window.

26. The Network Licensees thus pay Buena Vista license fees for the exclusive right to show the Copyrighted Movies for the first time on "broadcast and basic cable" television (*i.e.*, not on Pay Television) in the United States and its territories (the "1st Free Window").

27. For example, Buena Vista has signed license agreements with certain Network Licensees for the basic cable telecast of certain of the Copyrighted Movies for exclusive distribution during the 1st Free Window. The Network Licensees enjoy such a right as against all other premium television, basic cable, free over-the-air television, and other media platforms, such as the Internet.

28. To the Network Licensees, the rights to telecast the Copyrighted Movies during this 1st Free Window are exceedingly valuable because these rights provide such Network Licensee with an exclusive premiere on basic cable television to a potential audience of a hundred million subscribers. This value decreases with each prior airing because television viewers are less likely to watch a movie that they have seen before. The distribution of the

Copyrighted Movies to subscribers free of charge (*i.e.*, on non-premium television) in advance of this 1st Free Window thus immeasurably undermines the value that the Network Licensees place on their contractual rights to telecast the Copyrighted Movies during the 1st Free Window.

**Dish's Unauthorized Distribution of the Copyrighted Movies**

29. Upon information and belief, in February 2011, Dish notified millions of its subscribers that "in celebration of our 30 years in business," it would be providing various Starz premium services <u>for free</u> for an <u>entire year</u> (*i.e.*, February 2011 through January 2012). A copy of Dish's announcement to one of its subscribers is attached hereto as Exhibit E and is incorporated herein by reference.

30. Since February 2011, Dish has unlawfully distributed the following Copyrighted Movies airing on Starz at no charge to its customers: "Alice in Wonderland," "Confessions of a Shopaholic," "G-Force," "The Last Song," "Old Dogs," "Prince of Persia: The Sands of Time," "The Princess and the Frog," "The Proposal," "Race to Witch Mountain," "Surrogates," "Toy Story 3," "Up," and "When in Rome." Dish has plans to continue to unlawfully distribute certain of these Copyrighted Movies through January 31, 2012. A schedule listing the dates the Copyrighted Movies identified in this paragraph aired and are scheduled to air on Starz in the near future is attached hereto as Exhibit C and incorporated herein by reference.

31. The following additional Copyrighted Movies, among others, will also air on Starz, on information or belief, before January 31, 2012: "Disney's A Christmas Carol," "Secretariat," "The Sorcerer's Apprentice," "Tangled," "Tron: Legacy," and "You Again." If Dish is not immediately enjoined from airing Starz at no charge to its customers, these Copyrighted Movies will also be unlawfully distributed by Dish without Plaintiffs' authorization

10

or consent. A schedule listing the dates that certain of the Copyrighted Movies identified in this paragraph are scheduled to air on Starz is attached hereto as Exhibit D and incorporated herein by reference.

32. Neither the Plaintiffs nor Starz have granted any license, permission, or authorization to Dish to use, distribute, transmit, copy, publicly display and/or perform or otherwise exploit any of the Copyrighted Movies in this manner.

33. To the contrary, on March 4, 2011, Disney-ABC Domestic Television, d/b/a Buena Vista Television, LLC, wrote to Starz requesting that it instruct Dish to immediately cease and desist its Starz giveaway for a year on the grounds that it directly violates the Starz License. Starz in fact asked Dish to immediately cease and desist. In addition, representatives of BVPT also asked Dish to cease and desist its Starz giveaway. Notwithstanding this notice and opportunity to cure its ongoing unlawful conduct, Dish refused to terminate the free giveaway of the Starz channels. Instead, Dish has repeatedly distributed, transmitted, copied and publicly displayed and/or performed, and continues to distribute, transmit copy, and publicly display and/or perform several of the Copyrighted Movies on its suite of Starz channels which it gave to its subscribers for free.

34. Dish's unauthorized distribution, transmission, copying, and public display and/or performance of the Copyrighted Movies has and continues to cause ongoing irreparable injury to Disney Enterprises and BVPT. Plaintiffs' businesses depend on the ability to control the time, place and manner of the exhibition of their Copyrighted Movies. Indeed, windowing depends on the licensor's ability to provide limited, sequenced exhibition rights to its licensees. Dish's unauthorized telecasts on "free television" devalue Plaintiffs' exclusive rights to license the Copyrighted Movies because the distribution rights to the Copyrighted Movies are

worth far less to Network Licensees in the 1st Free Window after Dish premieres them to millions of subscribers on "free television."

35. The value of the distribution rights to the Copyrighted Movies to the Network Licensees further decreases with each subsequent airing by Dish on the Starz channels being given away for free, as viewers are far less likely to watch movies distributed by the Network Licensees after they have been premiered and repeatedly aired by Dish on Starz, which Dish has given away to its subscribers for free.

36. The devaluation of the rights to license the Copyrighted Movies as a result of Dish's Starz free giveaway has thus compromised Plaintiffs' goodwill and relationships with the Network Licensees and other customers. Dish's actions have also jeopardized Plaintiffs' reputations and future dealings with the Network Licensees and other customers. If the Network Licensees and other customers infer that Plaintiffs are not going to be able to manage the sequencing of the release of Disney Enterprises' Copyrighted Movies, as specified in license agreements and consistent with the common practice of windowing, then its ability to negotiate future licensing agreements with the Network Licensees and other customers will be harmed in a significant, but incalculable way.

37. By usurping the content of Starz Programming and making it available for millions of subscribers without requiring those subscribers to pay a premium subscription fee, Dish has unfairly misappropriated valuable commercial copyrighted property belonging to the Plaintiffs.

38. Dish's conduct has caused and is causing irreparable harm to Plaintiffs and to their intellectual property and interferes with BVPT's contractual relations with Starz.

## FIRST CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT (INJUNCTION)
(Copyright Infringement in violation of 17 U.S.C. §§ 101, *et. seq.*)

39. Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 38, inclusive, as though fully set forth herein.

40. Each of the Copyrighted Movies is an original audiovisual work that has been fixed in a tangible medium of expression and constitutes copyrightable subject matter within the meaning of Section 102 of the Copyright Act, 17 U.S.C. § 102.

41. Plaintiffs own the United States copyrights or the pertinent, exclusive distribution rights in the Copyrighted Movies attached hereto as Exhibit A. Disney Enterprises has obtained Certificates of Copyright Registration for each such Copyrighted Movie, as set forth in Exhibit B. Plaintiffs have complied in all respects with 17 U.S.C. §§ 101, *et seq.*, the statutory deposit and registration requirements thereof and all other laws governing federal copyrights.

42. The Copyright Act vests Disney Enterprises with the exclusive rights "(1) to reproduce the copyrighted work in copies . . . ; (2) to prepare derivative works based upon the copyrighted work; and (3) to distribute copies . . . of the copyrighted work to the public by sale . . . ." 17 U.S.C. §§ 106(1)-(3).

43. By reproducing and distributing, or causing, accomplishing, participating in and enabling the actual or imminent distribution and reproduction of unauthorized copies of the Copyrighted Movies in the manner described above, Dish is engaging in and imminently will engage in a vast number of copyright infringements, including infringements of Disney Enterprises' Copyrighted Movies, in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

44. The Copyright Act provides this Court with authority to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).

45. Dish's actions in distributing the Starz Programming, including Disney Enterprises' Copyrighted Movies, to millions of subscribers for free has already caused and will continue to cause substantial irreparable harm to Plaintiffs.

46. Unless preliminarily and permanently enjoined from providing Starz Programming in the unauthorized manner described herein, Dish threatens to unlawfully distribute, transmit, copy, and publicly display and/or perform the following Copyrighted Movies, which have not yet premiered on Pay Television, for free to millions of its subscribers, all without Plaintiffs' consent: "Disney's A Christmas Carol," "Secretariat," "The Sorcerer's Apprentice," "Tangled," "Tron: Legacy," and "You Again." Upon information and belief, "Disney's A Christmas Carol" is scheduled to be aired as early as May 21, 2011.

47. Unless preliminarily and permanently enjoined from providing Starz Programming in the unauthorized manner described herein, Dish threatens to continue to unlawfully distribute, transmit, copy and publicly display and/or perform certain of the Copyrighted Movies which have already appeared on Starz since February of 2011, including "Alice in Wonderland," "Confessions of a Shopaholic," "G-Force," "The Last Song," "Old Dogs," "Prince of Persia: The Sands of Time," "The Princess and the Frog," "The Proposal," "Race to Witch Mountain," "Surrogates," "Toy Story 3," "Up," and "When in Rome."

48. As a direct and proximate result of Dish's infringement and threatened infringement described above, Plaintiffs have suffered and will continue to suffer irreparable harm.

49. Plaintiffs have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT (ADDITIONAL RELIEF)

(Copyright Infringement in violation of 17 U.S.C. §§ 101 *et seq.*)

50. Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 49, inclusive, as though fully set forth herein.

51. Dish has already committed the following acts of infringement, which is a non-exhaustive list provided for illustrative purposes only. These prior acts of unlawful distribution, transmission, copying and public display and/or performance by Dish have been willful, intentional, and purposeful, in disregard of and indifference to Disney Enterprises' rights in the Copyrighted Movies.

52. On March 1, 2011, Dish unlawfully distributed, transmitted, copied and publicly displayed and/or performed the Copyrighted Movie "Alice in Wonderland" to millions of subscribers via Starz.

53. On March 3, 2011, Dish unlawfully distributed, transmitted, copied and publicly displayed and/or performed the Copyrighted Movie "Confessions of a Shopaholic" to millions of subscribers via Starz.

54. On March 3, 2011, Dish unlawfully distributed, transmitted, copied and publicly displayed and/or performed the Copyrighted Movie "G-Force" to millions of subscribers via Starz.

55. On March 3, 2011, Dish unlawfully distributed, transmitted, copied and publicly displayed and/or performed the Copyrighted Movie "The Last Song" to millions of subscribers via Starz.

56. On March 3, 2011, Dish unlawfully distributed, transmitted, copied and publicly displayed and/or performed the Copyrighted Movie "Old Dogs to millions of subscribers via Starz.

57. On March 3, 2011, Dish unlawfully distributed, transmitted, copied and publicly displayed and/or performed the Copyrighted Movie "Prince of Persia" to millions of subscribers via Starz.

58. On March 2, 2011, Dish unlawfully distributed, transmitted, copied and publicly displayed and/or performed the Copyrighted Movie "The Princess and the Frog" to millions of subscribers via Starz.

59. On March 2, 2011, Dish unlawfully distributed, transmitted, copied and publicly displayed and/or performed the Copyrighted Movie "The Proposal" to millions of subscribers via Starz.

60. On March 5, 2011, Dish unlawfully distributed, transmitted, copied and publicly displayed and/or performed the Copyrighted Movie "Race to Witch Mountain" to millions of subscribers via Starz.

61. On March 2, 2011, Dish unlawfully distributed, transmitted, copied and publicly displayed and/or performed Copyrighted Movie "Surrogates" to millions of subscribers via Starz.

62. On April 16, 2011, Dish unlawfully distributed, transmitted, copied and publicly displayed and/or performed the Copyrighted Movie "Toy Story 3" to millions of subscribers via Starz.

63. On March 2, 2011, unlawfully distributed, transmitted, copied and publicly displayed and/or performed the Copyrighted Movie "When in Rome" to millions of subscribers via Starz.

64. If, and to the extent the preliminary and permanent injunctive relief sought in the First Claim for Relief is not sufficient to provide a full and complete remedy to Plaintiffs, Plaintiffs are entitled to any non-remedied actual damages for past infringement, and/or Dish's profits from the unlawful and unauthorized distribution, transmission, copying, and public display and/or performance of the Copyrighted Movies. Alternatively, at Plaintiffs' election, Plaintiffs are entitled to the maximum statutory damages as permitted by federal copyright law, in addition to attorneys' fees.

65. Further, as a result of Dish's willful misconduct, Disney Enterprises and BVPT shall be entitled to an award equal to three times its statutory damages.

### THIRD CLAIM FOR RELIEF: SECONDARY COPYRIGHT INFRINGEMENT

66. Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 65, inclusive, as though fully set forth herein.

67. Through its acts of unlawful distribution, transmission, copying and public display and/or performance of Disney Enterprises' Copyrighted Movies, Dish induces, contributes to, and is vicariously liable for any copyright infringement committed by its subscribers, such as by unauthorized copies created by subscribers, even though innocent, on digital video recorders ("DVR") or other such technology.

### FOURTH CLAIM FOR RELIEF: TORTIOUS INTERFERENCE WITH CONTRACT

68. Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 67, inclusive, as though fully set forth herein.

69. BVPT has a contractual relationship with Starz that expressly limits Starz's license to distribute the Copyrighted Movies via "Pay Television," as defined in the Starz License.

70. Buena Vista has a contractual relationship with certain Network Licensees, which grant such Network Licensees the exclusive right to be the first entity to distribute a particular Copyrighted Movie on basic cable television.

71. Dish was aware of the existence of Buena Vista's agreements with Starz and various Network Licensees.

72. Dish, without justification, provided Starz Programming for free to millions of subscribers for one full year (*i.e.*, February 2011 through January 2012). Both Starz and BVPT requested that Dish cease and desist its unlawful activity with respect to its free distribution of Starz, but Dish has refused to do so. On the contrary, it has continued to distribute Copyrighted Motion Pictures on the now free Starz channels.

73. By distributing the Starz Programming, including certain Copyrighted Movies, to millions of subscribers for free, Dish has interfered with Starz's performance of an express condition of its agreement with BVPT, whereby Starz agreed that the Copyrighted Movies would only be available during its designated window via "Pay Television," as defined in the Starz License.

74. Dish has similarly interfered with Buena Vista's performance of their contracts with Network Licensees, as Dish has already distributed for free Copyrighted Movies even though Buena Vista has contractually agreed to grant certain Network Licensees the exclusive right to premiere and distribute certain Copyrighted Movies on basic cable television throughout the "First Free Window."

75. Dish's interference with Buena Vista's contractual relations has caused and continues to cause irreparable injury to Buena Vista's goodwill and reputation in an amount that cannot be ascertained at this time and, unless restrained, will cause further irreparable injury, leaving Buena Vista with no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully demand judgment against Dish:

A. That Dish, its affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be preliminarily and permanently enjoined and restrained from in any manner: (1) continuing, maintaining, or renewing its unauthorized and unlawful practice of providing Starz Programming for free, or from entering into, adopting, or following any practice, plan, program, or device having a similar purpose or effect; and (2) communicating or causing to be communicated to any current, former, or prospective subscriber that Starz Programming is available on Dish for free;

B. That this Court enter an order pursuant to Section 502 of the Copyright Act, 17 U.S.C. § 502, declaring that the actions of Dish complained of herein constitute willful copyright infringement, and granting injunctive relief enjoining Dish and any individual in the employ or control of either of them, from further distributing the Starz Programming for free;

C. That this Court require Dish to file with the Court and serve upon Plaintiffs a report in writing, under oath, setting forth in detail the manner and form in which it has complied with the terms of any injunction entered;

D. If, and to the extent the preliminary and permanent injunctive relief sought herein is not sufficient to provide a full and complete remedy to Plaintiffs, that as additional

relief, this Court enter an order pursuant to Section 504 of the Copyright Act, 17 U.S.C. § 504, stating that Plaintiffs may recover, at their election, either (1) the actual damages suffered by Plaintiffs with respect to past infringement, plus any additional profits of Dish that are attributable to the infringement that are not taken into account in computing the actual damages; or (2) statutory damages as provided by Section 504 (c);

   E. That this Court, at the election of Plaintiffs, grant it statutory damages against Dish for willfully committing infringement as provided by Section 504 of the Copyright Act, 15 U.S.C. § 504(c)(2);

   F. That this Court grant any additional relief to Plaintiffs warranted by Dish's unlawful actions, which constitute secondary copyright infringement;

   G. That this Court grant Plaintiffs their costs and reasonable attorney's fees as provided by, *inter alia*, Section 505 of the Copyright Act, 15 U.S.C. § 505;

   H. That Plaintiffs be awarded pre- and post-judgment interest;

   I. That this Court grant such other and further relief as it deems just and proper.

Dated: New York, New York
    May 2, 2011

            WEIL, GOTSHAL AND MANGES LLP

            By: /s/ David L. Yohai
            David L. Yohai
            Theodore E. Tsekerides
            David R. Singh
            767 Fifth Avenue
            New York, NY 10153
            (212) 310-8000 (tel.)
            (212) 310-8007 (fax)
            david.yohai@weil.com
            *Attorneys for Plaintiffs*